**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARACAS INTERNATIONAL BANKING CORP.<br><br>v.<br><br>UNITED STATES OF AMERICA and THE DRUG ENFORCEMENT ADMINISTRATION | CIV NO. 09- |

**VERIFIED
PETITION FOR TEMPORARY RESTRAINING ORDER AND/OR FOR PRELIMINARY INJUNCTION, TO QUASH SEIZURE WARRANT
AND FOR THE RETURN OF PROPERTY UNDER RULE 41(g) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

**TO THE HONORABLE COURT:**

Petitioner Caracas International Banking Corp. by and through the undersigned attorneys, very respectfully state and claim as follows:

## I.  INTRODUCTION

This a petition for injunctive relief, to quash a search warrant and for return of property.

## II. FACTUAL BACKGROUND

1. Petitioner Caracas International Banking Corporation ("CIBC" or the "Bank") is an international banking entity organized pursuant to Act 52 of August 11, 1989, 7 LPRA 221 et seq., as amended, also known as the "International Banking Center" duly licensed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and fully subject to the regulatory and examination authority of said Office.

2. On Tuesday, November 2, 2009, several agents from the Drug Enforcement Agency (DEA) appeared at the premises of CIBC to serve and execute four search and seizure warrants in cases 09-mj-775, 09-mj-776, 09-mj-777 and 09-mj-778 (See Exhibits A to D).

3. The search and seizure warrant in case 09-mj-778 request a search and seizure of 49 accounts named in the attachment A of the warrant.[1]

4. The search and seizure warrant in case 09-mj-776 and 09-mj-777 request the search and seizure of the following:

- In case 09-mj-776, all funds from CIBC accounts 1197287 and 000496318 at JP Morgan Chase Manhattan Bank. Upon receiving of this order, no ongoing transaction shall be processed. This warrant will have a continuing authority to seize any money for ten days to be counted from the serving date.

- In case 09-mj-777, all funds from CIBC account 3544026982001 at Standard Chartered Bank. Upon receiving of this order, no ongoing transaction shall be processed. This warrant will have a continuing authority to seize any money for ten days to be counted from the serving date.

5. The search and seizure warrants instruct the agents to seize all moneys and funds located in the above-mentioned accounts at the two banks located outside of Puerto Rico.

---

[1] Attachment A to 778 is not included at this time as part of this motion since it has been sealed by the court.

6. These accounts are the operational and/or clearing accounts of CIBC where the deposits and funds of all the bank's clients and depositors are kept, including clients not identified in the warrant and/or in any manner related to the entities and individuals identified in the other warrants served on November 2nd, nor in the other seizure warrants and/or subpoenas previously served to CIBC. Currently the Bank has approximately well over one thousand clients whose deposits are maintained at CIBC. Client's funds are held in the named accounts.

7. In the afternoon of November 2, 2009 the banks representatives received information from the DEA agents and from AUSA Miguel Fernández to the fact that the accounts at JP Morgan Chase Manhattan Bank and Standard Chartered Bank had been frozen pursuant to the search and seizure warrants.

8. The seizures of said accounts have rendered the bank inoperative and unable to continue with its normal and regular banking operations, that includes executing transactions requested by its clients from their accounts, such as withdrawals, payment of checks, transfer of funds, etc. Clients not identified in any of the seizure warrants and/or subpoenas served upon CIBC and JP Morgan have been deprived without due process of law access to their deposits and funds as a result of the seizure warrant.[2]

9. In fact, some of CIBC's numerous clients not covered by the search and seizure warrants have inquired as to why access to their accounts have been restricted. This delicate situation exposes the Bank to the risk of a depositor's run or panic, and will expose the Bank

---

[2] Since the affidavit in support of the warrants is sealed and the search and seizure warrant itself does not specify any violation of law, on its face, the warrant appears to have been issued without authority. Rule 41b) of the Federal Rules of Criminal Procedure.

to unnecessary and costly litigation.

10. The Seizure Warrants served upon the Bank on November 2, 2009 do not identify any criminal violation or investigation, cite any sections of any law nor identifies any type of violation of law and/or regulation. See *United States v. Kow*, 58 F. 3d 423, 427(9th Cir. 1995).

11. As with prior warrants and subpoenas served upon CIBC, none of the Seizure Warrants specify or even mention in any manner the alleged criminal violations or crimes under investigation to which the seized funds allegedly pertain.

12. The search and seizure warrants in 09-mj-776 y 09-mj-777 requesting the seizure of all funds maintained at the operational accounts of CIBC are clearly overbroad and general in violation of the Fourth Amendment particularity requirements and Petitioner's Fifth Amendment due process rights.

### III. PRIOR HISTORY

13. During the period of November 2008 to May 2009 the Bank has been served with 10 subpoenas and 4 Seizure Warrants and 1 extremely overbroad Search Warrant that did not comply with the Fourth Amendment particularity requirements.

14. Similar to the overbroad scope of the Search Warrants in cases 09-mj-776 y 09-mj-777, on May 11, 2009 CIBC was served by the DEA with a Search Warrant *"for all networks servers, electronic and/or computer data, along with the contents of desktop and/or laptop computers assigned to, or being utilized by Gregorio D'Andrea, Eduardo Villanueva and Javier Rosario; the electronic and/or physical log for all rejected transactions from October 6, 2008 to the present; any and all suspense or warehouse account transaction records from September*

*1, 2008 to the present; original letter from Abdala Makled-Al Chaer to the CIBC dated November 11, 2008 requesting the cancellation of a CD in the amount of $3.4 million and the application of said $3.4 million to debts incurred by Basel Makled-Al Chaer in the Banco Nacional de Crédito*". See Exhibit E.

15. Although the May 11 Seizure Warrant specifies a time frame for the records involved, said time frame is limited only to the request of "electronic and/or physical log for all rejected transactions from October 6, 2008 to present; any/all suspense or warehouse account transaction records from September 1, 2008 to the present." It does not specify a time frame indicated the nature of the alleged crimes or criminal investigations with regards to the search of "all networks servers, electronic and/or computer data, along with the contents of desktop and/or laptop computers assigned to, or being utilized by Gregorio D'Andrea, Eduardo Villanueva and Javier Rosario".

16. The agents seized all records in the Bank's computers, including confidential privileged commercial information and attorney client privileged communications, without compliance with the rules provided for searches and seizures of privileged and confidential communications.

17. The government did not follow its own Department of Justice's guidelines for *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* which states that:

> *The particularity requirement has two distinct elements. See United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999). First, the warrant must describe the things to be seized with sufficiently precise language so that it tells the officers how to separate the items properly*

Page **5** of **18**

*subject to seizure from irrelevant items. See Marron v. United States, 275 U.S. 192, 296 (1925) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."); Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997). Second, the description of the things to be seized must not be so broad that it encompasses items that should not be seized. See Upham, 168 F.3d at 535. Put another way, the description in the warrant of the things to be seized should be limited to the scope of the probable cause established in the warrant. See In re Grand Jury Investigation Concerning Solid State Devices, 130 F.3d 853, 857 (9th Cir. 1997). Considered together, the elements forbid agents from obtaining "general warrants" and instead require agents to conduct narrow seizures that attempt to "minimize[] unwarranted intrusions upon privacy." Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)".* (See United States Attorneys Manual, Computer Crime and Intellectual Property Section).

18.  As a result of said illegal seizure, on May 28, 2009 CIBC filed Motion to Quash, Request for Return of Property under Rule 41(G) of the Federal Rules of Criminal Procedure and for Protective Order, which is currently pending.

19.  CIBC is and has always been in compliance with all federal and Puerto Rico's banking laws and regulations, including compliance with the provisions of the Bank Secrecy Act and the regulations promulgated thereunder, including but not limited to the identification and notification of suspicious activities. The government is aware of this and is in possession of the suspicious activity reports (SAR) filed by the Bank as required by law which were filed by CIBC prior to any government intervention. CIBC has complied in a prompt and good faith manner to all requests from the government.

20.  As previously stated, the result of the search and seizure warrants in cases 09-mj-776 y 09-mj-777 has basically resulted in the shutting down of CIBC's

business and operations, causing that clients unrelated to any search or seizure warrant are unlawfully to access to their funds.

## IV. ARGUMENT AND APPLICABLE LAW

**PETITIONER MUST BE AFFORDED AN IMMEDIATE HEARING BASED UPON THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

    **A.**    **Petitioner's Fifth Amendment Due Process**

**The Petitioner's Fifth Amendment Due Process Rights Have Been Triggered by the Government's Seizure of the Petitioner's Property**

It is well recognized that a pre-trial seizure of assets constitutes an impairment on property triggering the Due Process Clause of the Fifth Amendment of the United States Constitution, which provides that "no person shall…be deprived of life, liberty, or property, without due process of law." See, *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); United States v. Crozier, 777 F.2d 1376, 1383 (9th Cir. 1985). The United States Supreme Court has gone so far as to describe pretrial asset restraints as the "nuclear weapon of the law." *Grupo Mexicano de Deasarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999).

The federal courts have consistently recognized that particular attention must be paid when dealing with this "severe remedy," *United States v. Razmilovic*, 419 F.3d 134, 137 (2d Cir. 2005). This is particularly so because asset restraints are imposed on an ex parte basis and without the benefit of an adversarial process and because the government has a strong pecuniary interest in the outcome. E.g., *United States v. James Daniel Good Real Property,* 510 U.S. 43, 56 n.2 (1993) (extent of government's

Page **7** of **18**

financial stake in forfeiture has produced a concomitant lack of neutrality); *Krimstock v. Kelly,* 306 F.3d 40, 63 (2d Cir. 2002) (there is a need for greater procedural safeguards – here, an early, pretrial adversary hearing – where the government has a pecuniary interest in the outcome of forfeiture proceedings), cert. denied, 539 U.S. 969 (2003); 1 *David B. Smith, Prosecution and Defense of Forfeiture Cases*, §§1.01-1.02 (2006 ed.).

**B. The Triggering of the Petitioner's Fifth Amendment Rights Necessitates a Hearing Where the Petitioner May Challenge the Government's Restraint of its Assets**

The protection afforded by the Due Process Clause's plain text applies whenever the government has "deprived" a person "of…property." U.S. Const. Amend. V; [Emphasis added]. Nothing in that clause limits the Fifth Amendment's protections to only those persons who need to use their seized property or who are indigent.

In *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993), the United States Supreme Court held that precedent "establish[es] the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." See also, *United States v. Perholtz*, 622 F.Supp. 1253, 1256 (D.D.C. 1985) ("The United States cannot obtain a permanent restraining order that prevents a defendant from disposing of his property by means of an ex parte proceeding. Due process requires that such an order be temporary and the United States must give affected defendants notice of a hearing within a brief amount of time or the ex parte order expires.

**C.     Various Courts Have Relied on Rule 65 of the Federal Rules of Civil Procedure to Decide Matters Such as the One Presently Before this Court.**

Courts have consistently held that a defendant is entitled to a prompt hearing whenever the government obtains an ex parte order restraining his property on the assertion that the property may be subject to forfeiture. *Application of Kingsley*, 802 F. 2d 571 (1st Cir. 1986). In *United States v. Roth*, 917 F. 2d 1131, 1133 (9th Cir. 1990), the court held that "in order for a restraining order … to be constitutional, the district court must hold a hearing under Rule 65 to determine whether probable cause exists to issue an injunction." *Id.* ; see also Crozier, 777 F.2d at 1384 (holding that "the district court… erred in denying without a hearing the motions of [the defendants] to dissolve the restraining order"); *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998) ("We agree with the [In re Assets of Martin, 1 F.3d 1351, 1355 (3d Cir. 1993)] court that the 'considerable weight' of decisions on point establishes that the restraining order in this case and the district court's order refusing to vacate it are immediately appealable under 28 U.S.C. § 1292(a)(1).")

The conservative Fifth Circuit has reached the same legal conclusions as the Ninth. In *United States v. Holy Land Foundation for relief and Development*, 445 F.3d 771, 788 (5th Cir. 2006), for example, the government obtained an ex parte restraining order under 21 U.S.C. § 853(e) to freeze and preserve the foundation's assets for criminal forfeiture. The government argued that the foundation did "not have an automatic right to a hearing under the forfeiture statute," and that the § 853 post-indictment restraining order had an "indefinite duration." Id. at 788. The Fifth Circuit, however, held that "in order for a restraining order under §853 to be constitutional, the

Page **9** of **18**

district court must hold a hearing under Rule 65 [of the Federal Rules of Civil Procedure] to determine whether probable cause exists to issue an injunction." Id. at 792; see also, *United States v. Thier*, 801 F.2d 1463, 1468 (5th Cir. 1986); *United States v. Melrose E. Subdivision*, 357 F.3d 493, 505 n.12 (5th Cir. 2004) ("As a general matter, the Federal Rules presumptively apply except to the extent that they actually conflict with a subsequent statute."); see also, *United States v. Riley*, 78 F.3d 367, 379 (8th Cir. 1996) (holding that before a post-indictment restraining order may issue "the government must demonstrate at a hearing that the RICO defendant is likely guilty and that the property to be restrained will be subject to criminal forfeiture").

## V. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF PURSUANT TO THE APPLICABLE FOUR FACTOR TEST

### Petitioner is Entitled to Injunctive Relief Pursuant to the Applicable Four-Factor Test

In determining whether to grant injunctive relief, "[b]lack letter law in this circuit instructs that district courts ordinarily are to determine the appropriateness of granting or denying a preliminary injunction on the basis of a four-part test that takes into account (1) the movant's likelihood of success on the merits, (2) the potential for irreparable injury, (3) a balancing of the relevant equities, and (4) the effect on the public interest." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991); *Sistemas Urbanos, Inc. v. Ramos*, 368 F. Supp. 2d 160, 162 (D.P.R. 2005) (citing *DeNovellis v. Shalala*, 135 F.3d 58, 62 (1st Cir. 1998)). Courts apply this four-factor test to temporary restraining orders. *Vieques Conservation Historical Trust v. Bush*,

140 F. Supp. 127, 129 (D.P.R. 2001); *In re Application of Kingsley*, *supra*. All four factors of this test weigh heavily in favor of granting Petitioner's application.

1. **Petitioner Will Suffer Irreparable Harm if Defendants Are Not Compelled to Comply With Their Obligations under Federal Law**

Allowing the seizure of all funds in the operational accounts of CIBC described in the search warrants in cases 09-mj-776 and 09-mj-777 has the direct effect of cutting off the bank from the funds of its clients, thus precluding the bank and its clients from executing the banking transactions in their ordinary course of business. This has the practical effect of closing the Bank with total disregard to the special procedures set out in the applicable laws for the operation, supervision and regulation of banking institutions. These special regulatory provisions are completely out of the purview and of the powers of the DEA and of the US Attorneys' office. Bear in mind that this effective receivership of the Bank carried out through the illegal and excessive warrants affects not only the Bank but also has the effect of effectively confiscating the funds of innocent clients not identified in any of the search warrants and/or subpoenas.

Furthermore, the freezing of the Bank´s operational accounts has generated foreseeable inquiries from Bank clients seeking an explanation for the lack of access to their funds. This uncertainty is bound to spread amongst other clients and depositors, thus unduly exposing the Bank to a depositor's run or panic. The unavoidable lack of liquidity which results from such a run is the death knell of a depository institution. It is this imminent and irreparable harm to which the government's undue and illegal action

has exposed the Bank and its depositors. Let us remember that the Bank being an International Banking Entity is not insured by the FDIC, which means that a resolution of the bank would imply further delays for clients to access their funds, an undue hardship for clients completely unrelated to the various warrants and subpoenas issued by the Government.

In applying the irreparable harm principle to a forfeiture action for the issuance of a preliminary injunction, courts have distinguished between the seizure of a mere asset and seizures of a business:

> In requesting a preliminary injunction in a forfeiture case, the claimant still must establish irreparable injury and that his remedy at law is inadequate. U.S. v. Mosquera, 695 F. Supp. 1353, 1357 (D. Mass. 1988). When the seizure only involves an item of personal property such as a car, irreparable harm may be very difficult to demonstrate. *Id.* On the other hand, when the seizure and forfeiture involves a business, it is likely that the government must make some satisfactory arrangements to continue the business, particularly if life or perishable property is at stake *(see e.g.* U.S. v. D.K.G. Appaloosas, Inc., 829 F.2d 532 (5th Cir. 1987), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988)(continued operation of horse ranch during forfeiture proceedings)). A business is different than a mere asset. It has an intangibility or life of its own. Thus, when a business is seized, it may be proper to require the continued operation of the business *pendente* **[**24**]** *lite* if seizing all of the assets would create irreparable harm by destroying the business. *See e.g.* One Parcel of Real Property, 767 F.2d at 1496 n.2 (district court entered an order substituting the wife of one of the restaurant owners as custodian of the property but prohibited any transfer of interest in property without court order). In a related context, the criminal forfeiture statutes permit the Court to appoint a trustee if necessary. 18 U.S.C. § 1963(e); 18 U.S.C. § 853(g). It would appear the same could be utilized in a civil forfeiture case if necessary. See *United States vs. Any And All Assets Of That Certain Business Known As Shane Company*, 816 F. Supp. 389 (1991).

These considerations take much more significance and relevance in the context of a bank.

The remedy of an immediate temporary restraining order and a preliminary injunction is necessary for the continued viability of the Bank's operations. Its business may not be salvaged if it's not allowed to continue its operations. The Bank will not be

able to meet its obligations to the clients and customers not involved in any criminal activity or violation, and failure to meet said obligations will inevitably cause the Banks illiquidity and even its insolvency.

**2. Petitioner Has Demonstrated a Likelihood of Success on the Merits Because of Defendants Violation of Federal Law**

As previously stated, the search warrants in cases 09-mj-776 and 09-mj-777 have several material defects that make them invalid, including lack of compliance with the Fourth Amendment particularity requirements. The main defects are as follows:

a.   The seizure warrants state that the same were issued by U.S. Magistrate Judge, Bruce J. McGivern in the U.S. District Court of Puerto Rico. They authorize the search of Caracas International Banking Corporation, 221 Ponce de León Avenue, Suite 701, San Juan, District of Puerto Rico and to seize all funds from CIBC located in accounts in financial institutions located outside of Puerto Rico. Pursuant to Rule 41(b)(1-5) of the Federal Rules of Criminal Procedure, Magistrate Judge, Bruce J. McGivern in the U.S. District Court of Puerto Rico has no authority to issue a search and seizure warrant for property outside of the District of Puerto Rico. The seizure warrants are illegal and the funds of CIBC in the mentioned accounts must be immediately released.

b. The warrants fail to identify or give any indication of the suspected or alleged crime or criminal activity to which the seized funds allegedly pertain.

c. The Warrant is A GENERAL overbroad WARRANT WITHOUTH THE REQUIRED SPECIFICITY

The widespread seizure of all CIBC's funds maintained in its operational accounts **would require probable cause to believe that CIBC entire business is permeated with criminal activity**. *United States v. Kow*, 58 F. 3d 423, 427 (9th Cir. 1995). Furthermore, the funds in question may only be forfeited if **there is probable**

**cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute**. *Application of Michael Kingsley*, 614 F. Supp 219; 1985. For the government to prevail in the present case, it would have to meet the heavy burden of showing that all or almost all of CIBC's clients, which are well over one thousand, are connected with the alleged illegal activities, not identified or mentioned in the search warrants. CIBC's record of compliance of more than fourteen years with its regulator, the Office of the Commissioner of Financial Institution, including compliance with federal anti-money laundering laws and regulations, demonstrates that the government will not be able to meet said heavy burden.

It is clear from the factual setting and legal framework that Petitioner has a strong likelihood to prevail on the merits of this case. Hence, they easily meet the first prong of the injunctive relief quartet. See *Puerto Rico Conservation Found. v. Larson*, 797 F. Supp. 1066, 1070 (D.P.R. 1992) (holding that movant "does not have to prove its claims at this stage of the proceedings, only that it is likely to succeed on the merits.") (Emphasis in original.) [ See Parts IV and V].

### 3. The Harm Posed to Petitioner in the Absence of Injunctive Relief Far Outweighs Any Harm That Would Be Suffered by Defendants if Injunctive Relief Is Granted

The third factor in determining whether injunctive relief is appropriate is whether the injury to the movant will outweigh the harm to the opposing party if the injunction is not granted. *Narragansett Indian Tribe*, 934 F.2d at 5. To determine whether the injury

to the movant will outweigh the harm imposed on any defendant, courts "need to make a comparison between the harm to the movant if no injunction issues and the harm to the objector if one does issue." *Freightliner LLC v. Puerto Rico Truck Sales, Inc.*, 399 F. Supp. 2d 57, 77 (D.P.R. 2005). As we have seen, the harm posed to petitioner includes the freezing of its operations, a denial of access to the funds of innocent clients, costly and unnecessary litigation, the risk of a deposit run, the resulting illiquidity, the potential insolvency, all of which amounts to the practical annihilation of the Bank. Presumably, the government´s opposing interest is the continuation of investigative efforts.  Issuance of the injunction unfreezing the Bank's operational accounts preserves the existence of the institution and does not hinder the government's investigations nor limits its broad investigative powers.  As a matter of fact, until now said investigative efforts have been carried out without the need to freeze the Bank's operations.

The injury that Petitioner would suffer in the absence of injunctive relief, the Bank's dissolution, far outweighs the potential harm that would inure to Defendants if this Court grants the requested injunction.

**2. Whether granting injunctive relief would adversely affect the public interest.**

Courts have explained that "[t]his factor involves policy considerations that bear on whether the injunction should be granted." *Sistemas Urbanos, Inc.*, 368 F. Supp. at 166 (quoting *Puerto Rico Conservation Found.*, 797 F. Supp. at 1073).  To begin with, although "[t]he public has an interest in the enforcement of federal statutes." *Coxcom,*

*Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008).  *United States v. Any and All Assets of that Certain Business Known as Shane Company*, supra.

Granting injunctive relief not only will have no adverse effect on the public interest; it will indeed protect it by ensuring the public trust in a depository institution which is subject to both federal and state regulatory and supervisory authorities.  We must remember that the Bank is subject to annual exams by independent public examiners that have evaluated the Bank's compliance with applicable laws and regulations, including those regarding Bank Secrecy Act and Anti Money Laundering.  The Bank is required to and has complied with the reporting requirements to its federal money laundering supervisor: the Financial Crime and Enforcement Network ("FinCen"), division of the Internal Revenue Service.  Also, it has undergone annual exams conducted by the Office of the Commissioner of Financial Institutions, whose examiners apply federal audit programs and standards.  Granting injunctive relief allowing the Bank due access to its operational accounts will be consistent and not

hinder the public interest of supporting the public trust in our banking system, particularly in a day and age in which all public policy efforts are geared towards enhancing said trust.  Finally, injunctive relief is not being seek with regards to the government's exercise of subpoena and seizure powers in the context of their investigative functions.

## VI. RETURN OF PROPERTY

Rule 41 of The Federal Rules of Criminal Procedure states:

> **(g)Motion to Return Property**. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

As previously stated, the search warrants in cases 09-mj-776 and 09-mj-777 are invalid and illegal. Therefore, the seizure by government of all funds from CIBC's operational accounts is illegal and continues to deprive CIBC of its property and of its ability to operate as a functioning depository institution.

Petitioner has a right to pursue this claim under Rule 41(g). *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983). *Rosevita Charter Const Corp V. United States*, 787 F.Supp. 39, 41, note 1(DCPR 1992).

## CONCLUSION

For the foregoing reasons, Petitioner respectfully request that this Court grant this application for a temporary restraining order and/or preliminary injunction, to quash the seizure warrant and order the return of property.

Respectfully submitted.

In San Juan, Puerto Rico, this November 4, 2009.

I HEREBY CERTIFY: that copy of the foregoing has been notified to **AUSA Miguel A. Fernández**, Chief Civil Division, U.S. Attorneys' Office, 350 Chardon Street, Torre Chardon, Suite 1201, San Juan, Puerto Rico.

      ***s/ Harry Anduze Montaño***
      Harry Anduze Montaño-114910
      1454 Fernández Juncos Avenue
      San Juan PR  00909
      Tel.  (787) 723-7171 Fax  (787) 723-7278
      E-mail handuze@microjuris.com

      ***s/José A. Morales Boscio***
      **José A. Morales Boscio-220614**
      1454 Fernández Juncos Avenue
      San Juan PR  00909
      Tel. (787) 723-7171/Fax  (787) 723-7278
      E-mail jmoralesb@microjuris.com

srp

F/HAM/Motions/CIBC – Motion for Preliminary Injunction (Caracas).doc